## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    v.

                             Criminal Action No. 1:21-cr-00322 (CJN)

PAUL MAUCHA,

       *Defendant*.

### MEMORANDUM OPINION

Defendant Paul Maucha, soon to be tried on conspiracy, fraud, and money laundering charges, has spent the two years since his initial arrest on pretrial release. But after the Government moved for Maucha's detention on the basis of pretrial violations and sought revocation of a Magistrate Judge's order permitting his release under amended conditions, the Court ordered his detention. The Court sets out here the findings and reasons behind that decision.

### I.      Background

On April 27, 2021, a grand jury returned an indictment charging Maucha with one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349; three counts of Wire Fraud in violation of 18 U.S.C. § 1343; and two counts of Engaging in Monetary Transactions in Criminally Derived Property in violation of 18 U.S.C. § 1957. Indictment, ECF No. 1. These charges, in short, are based on Maucha's alleged participation in an advance fee and investment fraud scheme with his co-defendant Melisa Shapiro. *See id.* Maucha and Shapiro allegedly made misrepresentations about a shell company they controlled, American Eagle Services Group Inc. ("AESG"), to fraudulently induce payments from borrowers, lenders, and investors. *See id.* ¶ 7.

1

Maucha was arrested on these charges on May 12, 2021, and then ordered released to the supervision of the Pretrial Services Agency on personal recognizance.  *See* Order Setting Conditions of Release ("Release Order"), ECF No. 7; Appearance Bond, ECF No. 7-1.  The conditions of release required, among other things, that Maucha (1) "not violate federal, state, or local law while on release"; (2) "surrender any passport" to the Pretrial Services Agency; (3) "not obtain a passport or other international travel document"; (4) stay within the District of Columbia, Maryland, and Virginia area, absent court approval of travel outside that area; and (5) contact the Pretrial Services Agency for a pretrial interview following his release.  Release Order at 1–3.  Maucha acknowledged the penalties and sanctions that could come with a violation of the release conditions, including detention upon revocation of release.  *Id.* at 4.

Nearly two years after Maucha's release on these conditions, the Government moved for an order of detention and revocation of release, alleging that Maucha had violated the condition that he not commit a federal, state, or local crime.  *See* Gov't Mot. to Revoke Def.'s Current Order of Pretrial Release ("Gov't Revocation Mot."), ECF No. 87.  In particular, the Government argued that Maucha had falsely represented to a Pretrial Services officer, during an interview that occurred two days after his release, that he was born in New York and is a U.S. citizen.  Through such conduct, the Government alleged, Maucha violated 18 U.S.C. § 1001, which makes it a felony offense to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of the "judicial branch of the Government of the United States" (except for statements or representations by a party to a judge or magistrate judge in a judicial proceeding).  18 U.S.C. § 1001(a)–(b).  Maucha was arrested, and he appeared for a hearing on the revocation motion before a Magistrate Judge.

Following that hearing, on June 2, 2023, the Magistrate Judge orally denied the Government's revocation motion.  First, the Magistrate Judge found under 18 U.S.C. § 3148(b)(1)(A) that probable cause existed to believe that Maucha violated 18 U.S.C. § 1001. June 2, 2023 Hr'g Tr. at 12, ECF No. 95-1.  Second, the Magistrate Judge found under 18 U.S.C. § 3148(b)(2)(A) that more restrictive conditions of release—home incarceration and location monitoring—would assure that Maucha would not flee or pose a danger to the safety of any other person or the community.  *Id.* at 17–18.  The Magistrate Judge also concluded that the Government had not met its burden of showing that Maucha was unlikely to abide by release conditions under 18 U.S.C. § 3148(b)(2)(B).  *Id.*  The Magistrate Judge therefore ordered Maucha's release with amended conditions of home incarceration and location monitoring.  *Id.* at 18.  The Government then moved for the Court's review of the Magistrate Judge's amended release order.  *See* Gov't Mot. for Emergency Stay & for Review & Appeal of Release Order ("Gov't Review Mot."), ECF No. 92.  That release order was stayed pending the Court's review.  *See* June 2, 2023 Hr'g Tr. at 18–19; June 6, 2023 Minute Order.

After additional briefing and another hearing on June 13, the Court orally granted the Government's motion and reversed the Magistrate Judge's release order, requiring instead that Maucha be detained pending his trial, which is currently set to begin in approximately five weeks.

## II.   Legal Standards

The Bail Reform Act, at 18 U.S.C. § 3148, provides that a person released pending trial who has violated a condition of release is "subject to a revocation of release" and "an order of detention."  18 U.S.C. § 3148(a).  If, after a hearing, a judicial officer finds that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release," the Act directs the judicial officer to order revocation and detention if the officer further concludes

that either (a) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," based on the factors set out in 18 U.S.C. § 3142(g); or (b) "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* § 3148(b).  As in the Fourth Amendment context, probable cause under § 3148(b) requires that the facts available "'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail." *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)).

The four factors to be considered under § 3142(g) are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  A judicial officer may amend conditions of release in accordance with § 3142 if the officer determines "that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions." *Id.* § 3148(b).

The Government may file a motion for revocation of an order of release issued by a magistrate judge with the district court, which the district court must "determine[] promptly." *Id.* § 3145(a).  The Court of Appeals has not "squarely decided" the standard of a district court's review of a magistrate judge's release order. *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021).  To the extent that the Court's decision to detain Maucha was based on the same evidentiary record that was before the Magistrate Judge, the Court conducted de novo review, the standard requested by the Government and uncontested by Maucha. *See* Gov't Review Mot. at

4–5.  In addition, the Government correctly noted that other courts in this district, and other circuit courts, have applied de novo review to magistrate judges' release or detention orders issued under § 3142 (and again, Maucha did not seek a change of course here).  *Id.*; *see, e.g.*, *United States v. Chrestman*, 525 F. Supp. 3d 14, 23–25 (D.D.C. 2021) (citing cases).  But the Court of Appeals has explained that when the Court considers "substantial additional evidence" not presented to the Magistrate Judge, the Court's review is "more akin to a new hearing, and as such, the issue before the District Court" is "not really whether to defer (or not) to a finding made by the Magistrate Judge on the same evidentiary record."  *Munchel*, 991 F.3d at 1280.  As detailed below, the Court considered substantial additional evidence here.

### III.   Analysis

## A.  Probable Cause Supports the Belief That Maucha Committed Federal Crimes During Release

### 1.   *False Statements to Pretrial Services Officer*

The Magistrate Judge concluded that the Government demonstrated probable cause of Maucha's commission of a federal crime while on release, specifically the felony of making false statements to an officer in violation of 18 U.S.C. § 1001, by lying about his citizenship status. June 2, 2023 Hr'g Tr. at 12.  The Government, of course, does not challenge that finding, but Maucha argues as an alternative ground for upholding the Magistrate Judge's release order that her probable cause determination was erroneous.

Upon review of the record, the Court agrees with the Magistrate Judge's finding of probable cause.  To start, a substantial showing by the Government supports the belief that Maucha is not, in fact, a U.S. citizen.  A U.S. Customs and Border Protection record reflects that a Kenyan citizen named Paul Modi Maucha, born on ███████████, received an H-2 Temporary Worker Visa that was issued in July 1988 and valid until April 1989.  Gov't Ex. 3, ECF No. 87-3; *see also,*

*e.g.*, Gov't Ex. 2, ECF No. 87-2 (Pretrial Services interview report listing Maucha's date of birth

as ███████████ ); Gov't Ex. 7 at 6, ECF No. 87-7 (Maucha's New York driver's license with

middle initial "M"). The Government proffered Social Security Administration records showing

that Maucha obtained a Social Security number, in connection with his visa, that he has used

consistently since.[1]  Gov't Revocation Mot. at 3; *see, e.g.*, Gov't Ex. 4, ECF No 87-4. After

examining Department of Homeland Security and State Department records, the Government has

uncovered no indication that Maucha has adjusted his immigration status or left the United States

after his entry in 1989. Gov't Revocation Mot. at 3. Further, the Government provided some

additional confirmation of Maucha's connection to Kenya on his Facebook account. *See* Gov't

Ex. 6 at 9, ECF No 87-6 (Maucha's statement that his mother is ███████████████ );

*see also* Gov't Ex. 12, ECF No. 87-12 (Maucha's marriage license listing mother as ████████

██████ and birth country of both parents as Tanzania). On top of this showing of Maucha's actual

citizenship status, the Government submitted evidence that Maucha made a materially false

representation to a Pretrial Services officer regarding that status during an interview that occurred

just two days after his release, on May 14, 2021. A record of the interview conducted by a Pretrial

Services officer reflects Maucha's representation that he is a U.S. citizen, born in New York. Gov't

Ex. 2, ECF No. 87-2.

Maucha does not argue—and he certainly does not present evidence to establish—that he

is a U.S. citizen. Instead, the only argument Maucha has offered to counter a finding of probable

cause of this crime is that the Pretrial Services interview report does not indicate the source of the

information recorded—in other words, there is no evidence that *Maucha* communicated to Pretrial

---

[1] The Government stated in its revocation motion that it was "in the process of obtaining certified records from the [Social Security Administration]," however, to date, the records have not been filed with the Court. Gov't Revocation Mot. at 3 n.1.

Services that he is a U.S. citizen. *See* Def.'s Opp'n to Gov't Revocation Mot. ("Def.'s Revocation Opp'n") at 1–2, ECF No. 93; Def.'s Opp'n to Gov't Review Mot. ("Def. Review Opp'n") at 2–3, ECF No. 94. The Court concludes, as did the Magistrate Judge, that enough evidence exists to resolve this doubt for purposes of finding probable cause, which does not require perfect proof. The Government proffered that, based on discussions with the supervisor of the Pretrial Services officer who completed Maucha's interview, the information reflected in the interview report resulted from that interview. June 1, 2023 Hr'g Tr. at 9, ECF No. 95-1. Additionally, emails regarding the Government's efforts to procure a copy of the interview report reflect that the information recorded in the report was entered directly into the agency database from the interview. *See* Gov't Exs. 6–8, ECF Nos. 92-6 to -8. The Government also presented the Magistrate Judge with a Pretrial Services Report, completed on the day of Maucha's arrest (before the interview was conducted), where fields of "Marital Status," "US Citizen," "Length in Area," "Children/Dependents," and "Lives With" are all left blank. Gov't Ex. C, ECF No. 91-3; *see also* June 1, 2023 Hr'g Tr. at 9–10. Following the interview, of course, those fields were filled in. Gov't Ex. 2, ECF No. 87-2. And finally, while records from the Joint Automated Booking System (JABS) show that Maucha provided the same birthplace and citizenship information upon his arrest, he appears to have corrected information about his height and weight during his subsequent interview with Pretrial Services. *Compare* Gov't Ex. 1, ECF No. 87-1 (JABS record stating 6'9" height and 160-pound weight), *with* Gov't Ex. 2, ECF No. 87-2 (Pretrial Services interview report stating 5'11" height and 165-pound weight); *see* June 1, 2023 Hr'g Tr. at 10. This further supports the inference that Maucha provided new information to the Pretrial Services officer and that the officer did not merely import the information from another source.

Altogether, the Government's submissions establish probable cause that Maucha made false representations to a Pretrial Services officer during the interview regarding his citizenship status.

   *2.  Illegal Voting in 2022 General Election*

After filing its initial motion for revocation, the Government submitted additional evidence to the Magistrate Judge that Maucha committed a federal misdemeanor offense while on release by illegally voting in violation of 18 U.S.C. § 611, which restricts voting by aliens.  *See* 18 U.S.C. § 611(a)–(b).  The Magistrate Judge did not determine whether the Government demonstrated probable cause as to this offense.  Upon its own review of the record, however, the Court concludes that probable cause exists here as well.  The Executive Director of the D.C. Board of Elections certified that a voter named "Paul M. Maucha," registered at Maucha's current home address, voted in the 2022 General Election in the District of Columbia (as well as several other elections not relevant here).  Gov't Ex. 9, ECF No. 92-9.  Maucha's sole response—that the Executive Director "state[d] only that someone purporting to be Paul Maucha registered in that name and voted in the 2022 election," and that the true explanation could be that *someone else* committed voter fraud by pretending to be Maucha—falls flat.  Def.'s Review Opp'n at 3.  Far-fetched speculation about potential voter fraud does not defeat probable cause here.

**B.  No Conditions of Release Will Assure That Maucha Will Not Flee**

After finding probable cause that Maucha committed a federal crime while on release, the Magistrate Judge concluded that the more stringent conditions of release of home incarceration and location monitoring would be adequate to assure that Maucha would not flee.  *See* 18 U.S.C. § 3148(b)(2)(A).  The Court reaches a different conclusion after its own weighing of the § 3142(g) factors, based in substantial part on new information not made available to the Magistrate Judge.

*1.   Nature and Circumstances of the Offense*

As the Magistrate Judge concluded, the nature of the charged offenses, which are based on acts of deception, enhances the risk of flight.  *See* June 2, 2023 Hr'g Tr. at 14.  The Court also places substantial weight on the seriousness of the consequences that Maucha could face if convicted on those charges.  Even without considering his immigration status, Maucha faces a maximum prison sentence of 20 years on Count One (Conspiracy to Commit Wire Fraud); 20 years on Counts Two through Four (Wire Fraud); and 10 years on Counts Five and Six (Engaging in Monetary Transactions in Criminally Derived Property).  18 U.S.C. §§ 1343, 1349, 1957(b)(1); *see United States v. Otunyo*, No. 18-251, 2020 WL 2065041, at *4 (D.D.C. Apr. 28, 2020) ("Reflecting the seriousness of the charges against defendant is the significant period of incarceration provided for each charge.").  The Government has estimated the potential Sentencing Guidelines range for these charges as 78 to 97 months' imprisonment, and Maucha has not offered a competing calculation.  Gov't Review Mot. at 12 & n.5.  The realistic possibility of this substantial term of imprisonment incentivizes flight.

The potential consequences of Maucha's conviction in this case become even more grave when taking his immigration status into account.  Already, the Department of Homeland Security has imposed an immigration detainer against Maucha to initiate deportation proceedings.  *See* June 1, 2023 Hr'g Tr. at 6, 23–25.  Maucha has all but conceded the point that he is not a U.S. citizen and that he is subject to deportation, offering no evidence or even argument to the contrary, and apparently suggesting to the Government that he could "self-deport."  *See id.* at 17–18, 22–23; June 13, 2023 Hr'g Tr. at 14.  Maucha's expected outcomes have therefore shifted since his initial release; though he now faces a significant likelihood of deportation regardless of whether he is convicted, the prospect of his remaining in the United States *after* serving his sentence has

dissipated.  By staying for trial (and any sentencing), however, Maucha would subject himself to the added risk of a substantial term of incarceration on top of deportation.

      *2.   Weight of the Evidence*

The Magistrate Judge did not address in her oral ruling whether the weight of the evidence of the charged offenses likewise favors detention, but Maucha offers no reason to conclude otherwise.  Based on the information currently available to the Court, the evidence against Maucha appears to be strong.  Maucha's alleged co-conspirator Shapiro has already pleaded guilty to Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 and is expected to testify against him at his trial, having agreed to cooperate with the prosecution.  *See* Shapiro Plea Agreement at 5–7, ECF No. 45.  In a detailed Statement of Offense submitted in connection with her guilty plea, Shapiro acknowledged that she and Maucha "conspired and agreed with each other" to engage in a fraudulent scheme to attract investors and lenders to AESG, as alleged in the Indictment.  Statement of Offense ¶¶ 4–5, ECF No. 46; *see* Indictment ¶¶ 7–8.  The Government also anticipates that several alleged victims will testify about the misrepresentations that Maucha personally made to induce their payments to AESG.  Gov't Review Mot. at 13 (citing Gov't Witness List, ECF No. 68-4).  And the Government has pointed to document-based evidence that the fraud conspiracy involved misrepresentations about AESG's access to capital; the doctoring of bank statements; and efforts to allay alleged victims' concerns when their promised funds were not delivered.  Gov't Exs. 10–13; ECF Nos. 92-10 to -13.

      *3.   History and Characteristics of the Defendant*

The Magistrate Judge determined that Maucha's history and characteristics favored the ultimate conclusion that he does not pose a serious risk of flight warranting detention after weighing competing considerations:  on the one hand (favoring detention), his immigration status

and "apparent ties to another country," and on the other (favoring release), his general compliance with release conditions over the course of the two years since his arrest, as well as the fact that he has not fled yet.  June 2, 2023 Hr'g Tr. at 14–17.  The Court's own review of the record leads it to strike a different balance.

To be sure, the fact that Maucha has not already fled the jurisdiction, despite potentially having both the incentives and the opportunities to do so, deserves *some* weight.  *See* 18 U.S.C. § 3142(g)(3)(A) (instructing courts to consider a defendant's "record concerning appearance at court proceedings").  But the fact that Maucha's real citizenship status was only recently discovered by the Government militates against viewing the entire period of his past compliance as a reliable forecast of the future.  As discussed above, Maucha's apparent unlawful presence in the United States is likely to lead to his deportation, and he may not have anticipated the discovery of this fact before the Government first raised concerns about his immigration status in connection with this case in December 2022 or January 2023.  And it is only through the litigation of this detention issue that the Government has fully confronted Maucha with the evidence it has regarding his immigration status.

However abstract this analysis of Maucha's shifting incentives, new information that surfaced after the Magistrate Judge's ruling allows insight into the flight risk that Maucha poses in a more concrete way.  The Government filed a police report from June 8, 2022, in which Maucha reported having lost his Kenyan passport and having made a similar police report for the same reason in 2015.[2]  Gov't Ex. 15, ECF No. 92-15.  In the Government's view, "Maucha's sudden

---

[2] No evidence has been presented that Maucha has ever possessed a U.S. passport.  To the contrary, "Client Information Sheets" sent in relation to Maucha's AESG activities list an invalid passport number that matched Maucha's New York driver's license number.  *See* Gov't Ex. 8 at 4–5, ECF No. 87-8; Gov't Ex. 9 at 3–4, ECF No. 87-9.

concern about a passport, that he claimed to have reported stolen seven years prior" was "particularly troubling given that he was prohibited from any international travel under his conditions of release." Gov't Review Mot. at 15. At the next hearing, Maucha explained that he had lost his Kenyan passport and reported it lost in 2015, but then applied for a replacement that was also lost; it was that replacement that he reported lost in 2022. June 13, 2023 Hr'g Tr. at 18. Maucha also represented to this Court through counsel that he *then applied for a new Kenyan passport*—that is, that he applied for a new Kenyan passport while on pretrial release—and further that he believes that passport may be in the process of being sent to him now. *Id.*

Maucha's application for a new Kenyan passport comes dangerously close to a violation of yet another condition of Maucha's initial release order—that Maucha "not obtain a passport or other international travel document." Release Order at 2. What's more, the redoubling of Maucha's efforts to obtain a Kenyan passport while on pretrial release raises serious concerns about both his desire and his ability to flee. Maucha's release condition that he surrender any passport to Pretrial Services, in combination with the requirement that he not obtain any new international travel document, effectively prevented international travel. *Id.* His endeavor to obtain a Kenyan passport while on release, then, tends to show that he attempted to circumvent his release conditions at best, and that he planned to flee at worst. Either way, this new information counsels against giving Maucha too much credit for his record of compliance so far, and it increases the seriousness of the flight risk that he poses.

The § 3142(g) factors also instruct courts to consider, as part of the history and characteristics of the defendant, "whether, at the time of the current offense or arrest, the person was on . . . release pending trial." 18 U.S.C. § 3142(g)(3)(B). As discussed above, the Court has found probable cause that Maucha committed multiple federal crimes while on release in

connection with his immigration status, which supports detention by suggesting his disregard for the Court's authority and his willingness to violate the law even while under court supervision.

Last, like the Magistrate Judge, the Court is not prepared to determine with certainty the strength of all of Maucha's claimed ties to the D.C. area. June 2, 2023 Hr'g Tr. at 17–18. Maucha represented during the initial hearing both that he has a 15-year-old daughter who lives in the area with her maternal grandmother and that he owns his home "free and clear." *Id.* at 4. Some contrary indications, unexplained by Maucha, exist as to both of those claims. *See* Gov't Ex. 2, ECF No. 87-2 (Pretrial Services interview report reflecting no dependents and no family in the D.C. area); Countercomplaint at 3, *Bank of New York Mellon v. Maucha*, No. 22-cv-3673 (D.D.C. Dec. 8, 2022) (Maucha's description that he is a "tenant" at his current residential address); Gov't Ex. 4, ECF No. 92-4 (tax records reflecting homeowner as "Bank of New York Mellon Trustee"). Beyond these ties, Maucha points to his now-inoperative construction business and his membership in a local religious organization. June 2, 2023 Hr'g Tr. at 4. He also appears to have resided in the D.C. area for over 20 years. Gov't Ex. 2, ECF No 87-2. Even if credited, these community ties would not tip the balance of this factor, let alone the ultimate flight-risk question, in favor of release.

### 4. *Nature and Seriousness of the Danger Posed by Release*

The last § 3142(g) factor—"the nature and seriousness of the danger to any person or the community that would be posed by the person's release"—is somewhat awkward to apply in cases where the primary risk attending the defendant's release is the danger that he may flee, not that he may threaten the physical safety of others. 18 U.S.C. § 3142(g)(4). But in the similar context of a court's initial decision whether to detain or release a defendant under § 3142, the Court of Appeals has clarified that the Bail Reform Act's concept of "danger to the community" may extend

to "non-physical harms such as corrupting a union." *Munchel*, 991 F.3d at 1281 (quotation omitted); *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021). That broad understanding of danger also comports with the text of § 3148(b), which establishes "a rebuttable presumption . . . that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community" if there is probable cause to believe that the person committed any felony while on release. 18 U.S.C. § 3148(b)(2). The presumption is not limited only to crimes involving violence.[3]

Even though the record now before the Court includes no substantial indication that Maucha's release would pose a risk of *physical* danger to others, the danger that Maucha may engage in further criminal activity—especially given the signs of deceptive behavior while on release and even during these proceedings—does favor detention, at least slightly. Both the kind and the degree of this danger, and the fact that the Court is primarily concerned about Maucha's risk of flight here, causes the Court to give this factor relatively little weight as compared to others.

\*     \*     \*

Based on all of these factors, the Court concludes that Maucha poses a serious risk of flight. The Court has therefore carefully considered whether the restrictive release conditions that the Magistrate Judge ordered—home incarceration and location monitoring—would assure that Maucha would not flee, but has determined that they would not. Location monitoring is unfortunately not a foolproof method of hindering defendants who are set on fleeing. *See* June 13,

---

[3] The Court does not address the applicability of this presumption here, focusing instead on the question of whether conditions of release can assure Maucha's appearance at trial. Nevertheless, the Court of Appeals has considered a defendant's dangerousness as one of the four § 3142(g) factors even when flight risk is primarily at issue, so the Court likewise considers dangerousness, as a subsidiary matter, here. *See United States v. Vasquez-Benitez*, 919 F.3d 546, 550–52 (D.C. Cir. 2019).

2023 Hr'g Tr. at 17, 23; *see also, e.g.*, Minute Entry, *United States v. Pollock*, No. 21-cr-447 (D.D.C. May 19, 2023) (noting fugitive status of two defendants who fled while on GPS monitoring).  Given the severity of the risk of flight here, the Court has concluded that nothing short of detention will adequately assure Maucha's appearance at his upcoming trial.  As a result, the Court has also determined that Maucha is "unlikely to abide" by the amended conditions of release ordered by the Magistrate Judge, which is a separate ground for detention under § 3148(b)(2)(B).

For these reasons, the Magistrate Judge's release order is revoked and the Government's motion for Maucha's detention pending trial is granted.

DATE:  June 16, 2023

CARL J. NICHOLS
United States District Judge